581 F.2d 1111
 Ronald Augustus DiPAOLA, Appellant,
v.
Walter RIDDLE, Superintendent, Virginia State Penitentiary,
James D. Swinson, Sheriff, Fairfax County, William
J. Powell, Sheriff, Sussex County, Appellees.
 No. 77-1293.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 6, 1977.
Decided Aug. 21, 1978.
 
 John Kenneth Zwerling, Richmond, Va. (J. Flowers Mark, Alexandria, Va., on brief), for appellant.
 Jerry P. Slonaker, Asst. Atty. Gen., Richmond, Va. (Anthony F. Troy, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellees.
 Before HAYNSWORTH, Chief Judge, FIELD, Senior Circuit Judge, and THOMSEN*, Senior District Judge.
 HAYNSWORTH, Chief Judge:
 
 
 1
 Prior to and during the trial in the state court for the possession of marijuana with the intention of distributing it, DiPaola sought the suppression on constitutional grounds of marijuana that had been seized. At that time, however, he did not object to the search on the ground that there had been a "no knock" entry of the house and no announcement that the ununiformed intruders were policemen. DiPaola had been in the basement of the house, and his counsel represented that he knew nothing of the manner in which entry was effected. One of the persons arrested, however, was on the first floor of the house and knew of the "no knock" entry. He was represented by the same lawyers who represented DiPaola, and they reported that they did not learn of the nature of the entry from their other client until shortly after a jury found DiPaola guilty, though this was several months before the court imposed its sentence upon DiPaola. The question is whether DiPaola had an opportunity to fully litigate his "no knock" entry claim in the courts of Virginia so as to foreclose his assertion of that claim in a federal habeas corpus proceeding under the rule of Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).
 
 I.
 
 2
 Acting upon an informant's tip, a regular, full time, but undercover policeman went to a house in Fairfax County, Virginia posing as a prospective purchaser of marijuana. His informant and DiPaola were in the yard. DiPaola invited him into the house, and the three went down into a basement room where there were two others. They negotiated for the purchase of twenty pounds of marijuana, and the box was given to Colavita, the policeman, for inspection. After the negotiations were complete, on a signal from Colavita, several policemen in civilian clothing and with drawn guns entered the house. The front door was forced open. A glass pane in the kitchen door was broken so that it might be unlocked from the inside. Perhaps jokingly, one of the intruders informed the people on the first floor of the house, "This isn't a bust. This is just a big rip-off."
 
 
 3
 One of the intruders, immediately after his entry into the house, went down into the basement room. Another soon followed. They identified themselves as policemen, and they arrested DiPaola and his two companions, and at least pretended to arrest Colavita, the policeman who had been invited in as the purchaser of the marijuana. They returned upstairs with the four persons placed under arrest and the marijuana, and then disclosed to the occupants of the first floor their identity as policemen.
 
 
 4
 Before and during DiPaola's trial, his lawyer sought the suppression of the marijuana, contending that there was no probable cause for a search by the policemen who participated in the forceful entry, and that there was no warrant.
 
 
 5
 Only one of the persons on the first floor of the house at the time of the forced entry was arrested. That one, Scheps, was represented by the same lawyers who represented DiPaola. Scheps, of course, knew all about the forced entry, but the lawyers later filed affidavits that Scheps did not tell them about the manner in which the intruding policemen gained their entrance until they were preparing for Scheps' trial, shortly after the jury had found DiPaola guilty. During DiPaola's trial, they say, they were unaware of the factual basis of the claim that is now asserted in DiPaola's behalf by other lawyers.II.
 
 
 6
 When this federal habeas claim was first asserted, the district court concluded that the writ should issue. The statute, 18 U.S.C.A. § 3109, requiring federal law enforcement officers to knock and to identify themselves, had no application to the conduct of these state policemen, but the district court thought that the breaking of the doors and the absence of any immediate announcement was so egregious that it amounted to a violation of the Fourth Amendment.[1] The Commonwealth appealed, and, thereafter, the Supreme Court announced its decision in Stone v. Powell. We remanded for reconsideration in light of Stone v. Powell. The district court then held that the claim was foreclosed by that opinion of the Supreme Court, and DiPaola then brought the case back to us.
 
 III.
 
 7
 Stone v. Powell's rule of preclusion is not dependent upon a finding that the contention was asserted and fully litigated in the state courts. It is enough that the state provided the mechanism and an opportunity for such full and fair litigation. See, e. g., Doleman v. Muncy, 579 F.2d 1258 (4th Cir. 1978). Our task then is to determine whether Virginia law provided DiPaola an opportunity for the litigation of his claim, notwithstanding the lawyer's ignorance of its factual basis before the jury returned its verdict in light of Virginia's procedural rule, stated in Slayton v. Parrigan, 215 Va. 27, 205 S.E.2d 680 (1974), that evidentiary rulings are not open to subsequent review in the absence of a contemporaneous objection. We think there was such an opportunity.
 
 
 8
 DiPaola was tried in June 1974. According to his trial lawyers they did not learn from Scheps of the nature of the entry by the several policemen until later that month or early in July. The judge, however, did not sentence DiPaola until October or November. The record indicates that the trial lawyers did file some post-trial motions, but they did not seek an order to set aside the verdict or to award a new trial upon the ground of after-discovered evidence providing them with a factual basis to strike the fruits of the search from the evidence. Under Virginia rule 3A:22 provision is made for motions for new trials and to set aside a verdict of guilty if made within twenty-one days after the entry of the final order. Under the rule the motion could have been made within twenty-days after the imposition of sentence in October or November. Had such a motion been made, we can find nothing in Virginia law which would suggest that an evidentiary hearing and a ruling on the constitutional claim would not have been appropriate and required.
 
 
 9
 Slayton v. Parrigan, on its face, is a perfectly acceptable rule. The trial judge should have the first opportunity to rule upon objections to evidence, and his ruling should be made at the time the evidence is offered or even in advance of trial. Ordinarily, a party should not be permitted to stand silently by and later to contest the admissibility of crucial evidence only after the fact finding has gone against him. But surely Slayton v. Parrigan does not require defense counsel to speak when he is excusably ignorant of the factual basis of objection later asserted. The rule of Slayton v. Parrigan requires a trial lawyer to assert his objections in a timely fashion, but considerations of timeliness do not require a recitation of facts which are unknown to lawyer and client and they are not chargeable by law with knowledge of them.[2] Slayton v. Parrigan is an expression of a not unreasonable procedural rule designed to promote orderliness. It need not be distorted into an engine of justice, foreclosing claims which, for good reasons, could not have been asserted earlier.
 
 
 10
 It is possible that DiPaola may have a claim for habeas relief in the state courts on the ground of inadequate representation by his trial lawyers when they failed to file a motion for a new trial or a motion to set aside the verdict. That is only speculative, however, for the lawyers may have felt it not worth the candle. The subsequent unlawful entry by other policemen would not affect the legality of Colavita's presence. There was no factual basis for a motion to strike his testimony, and they may have reasonably thought that a motion to strike the physical marijuana exhibit, even if successful, would be held not to warrant a new trial. The questions which would arise if such a claim were asserted, however, are not now before us, and what we have said should not be taken as an expression of opinion upon them.
 
 
 11
 AFFIRMED.
 
 
 
 *
 Senior District Judge for the District of Maryland, sitting by designation
 
 
 [1]
 See, however, United States v. Bradley, 455 F.2d 1181 (1 Cir.); United States v. Glassel, 488 F.2d 143 (9 Cir.). Since Colavita had been invited into the house, and had obtained possession of the marijuana as its apparent purchaser, those cases suggest that suppression is not required under § 3109 by reason of a subsequent unlawful entry by other policemen
 
 
 [2]
 The district judge, thought it inconceivable that DiPaola did not know of the "no knock" entry. Though he was in a basement room, he thought that DiPaola and the others with him would have heard of the commotion. There has been no inquiry as to that, however. We do not know what, if anything, the policeman in the basement, Colavita, heard