METROCARE, Charles D. Fizer, Alonzo McNair, Henry P. Armwood, William E. Battle, Jr., Plaintiffs-Appellants,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant-Appellee.

No. 81–1285.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 21, 1982.

Decided May 28, 1982.

---

Robert A. W. Boraks, Washington, D.C., for appellants.

John Charles Swanson, Washington, D. C., for appellee.

Before EDWARDS, Circuit Judge, McGOWAN, Senior Circuit Judge, and DAVIS, Judge.*

Opinion for the Court filed by Judge DAVIS.

DAVIS, Judge:

Plaintiffs-appellants brought suit in the District Court seeking monetary damages for, and appropriate injunctive relief from, alleged race discrimination said to be in violation of the Civil Rights Acts of 1870 and 1871, 42 U.S.C. § 1981 and § 1983 (1976).[1] After a full trial, the jury found that defendant-appellee, Washington Metropolitan Area Transit Authority (WMATA), had discriminated against the four black plaintiffs individually and against the class of all salaried ("TA-rated"), black WMATA employees (represented by plaintiff Metrocare) as a whole.[2] Defendant then moved for a judgment notwithstanding the verdict. Basing its decision on two alternative grounds, the District Court granted the motion. The court found that the individuals and class representative had failed to make out prima facie cases, and that on the whole case a reasonable jury could not have found it more likely than not that the defendant discriminated on the basis of race. With respect to the individual plaintiffs, we find otherwise and reverse. As to the class, we agree with the trial judge's result and affirm.

The court below enunciated the correct legal standard for entering a judgment notwithstanding the verdict, but failed fully to apply that standard to one part of this case. A judgment notwithstanding should only be entered if the evidence, and all reasonable inference from it, is so one-sided that reasonable jurors could not disagree on that conclusion. *See, e.g., Vander Zee v. Karabatsos*, 191 U.S.App. D.C. 200, 203, 589 F.2d 723, 726 (1978), *cert. denied*, 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066 (1979). As with directed verdicts, *see id.*, the ruling is proper only if "there can be but one reasonable conclusion" drawn from the evidence viewed "in the light most favorable to the plaintiffs [in this case], giving them the advantage of every fair and reasonable inference that the

---

* Of the United States Court of Claims, sitting by designation pursuant to 28 U.S.C. § 293(a).

1. The District Court held the suit sustainable only under § 1981. Plaintiff's do not assert that the theory underlying their § 1983 claim is different from that grounding the § 1981 claim. Because the theory on both bases of recovery is the same, we need not discuss and express no opinion as to whether the case could properly be brought under § 1983.

2. The jury answered special interrogatories which required it to make separate findings as to (1) racial discrimination with respect to each of the four individual plaintiffs, (2) the amount of damages as to each, and (3) the racially discriminatory pattern of practice of WMATA toward its black salaried (TA-rated) employees.

evidence may justify", *Foster v. Maryland State Savings and Loan Association,* 191 U.S.App.D.C. 226, 228, 590 F.2d 928, 930 (1978), *cert. denied,* 439 U.S. 1071, 99 S.Ct. 842, 59 L.Ed.2d 37 (1979). The trial court may not assess the credibility of the witnesses or weigh the evidence. *Boutros v. Riggs National Bank, D. C.,* 655 F.2d 1257, 1258 (D.C.Cir.1981). It is the essence of the jury's function to select, from among conflicting inferences and conclusions, that which it finds most reasonable. *Schulz v. Pennsylvania Railroad,* 350 U.S. 523, 526, 76 S.Ct. 608, 610, 100 L.Ed. 668 (1956). We must evaluate the District Court's judgment in light of those strict limits confining the trial court's scrutiny of the jury's verdict.

## I. THE INDIVIDUAL PLAINTIFFS

▪ The District Court found that the four individual plaintiffs had not presented a prima facie case and also that no reasonable juror could have found discrimination. The Supreme Court has not yet decided whether intent to discriminate must be shown to establish a § 1981 claim. *See County of Los Angeles v. Davis,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (issue presented, but case vacated for mootness).[3] For this aspect of the case, however, we may assume (without deciding) that intent must be shown, because, even with that added burden, plaintiffs' evidence is sufficient to support the jury's verdict.

▪ With respect to the existence of a prima facie case, we note that Title VII disparate *treatment* (as distinguished from disparate *impact*) cases also require proof of intent. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n.15, 52 L.Ed.2d 396 (1977). It is appropriate therefore to borrow the elements of a prima facie case from those applicable in Title VII disparate treatment actions. *See Long v. Ford Motor Co.,* 496 F.2d 500, 505, n.11 (6th Cir. 1974); *cf. Ramirez v. Sloss,* 615 F.2d 163, 168 n.7 (5th Cir. 1980). As enumerated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the components of a prima facie case to be shown by the plaintiff are:

> "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."

*Id.* 411 U.S. at 802, 93 S.Ct. at 1824. Where, as here, the act complained of is, not a failure to hire, but rather a discharge or failure to promote, the prima facie elements must, of course, be adapted to that situation. *See Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277, 1281–82, n.3 (7th Cir. 1977) (discharge); *Bundy v. Jackson,* 205 U.S.App.D.C. 444, 461, 641 F.2d 934, 951 (1981) (refusal to promote).

---

**3.** Several of the circuits have held intent to be a requirement for a § 1981 violation, *see Guardians Ass'n of New York City Police Dept., Inc. v. Civil Service Commission of New York,* 633 F.2d 232, 263–8 (2d Cir. 1980), *cert. granted,* —— U.S. ——, 102 S.Ct. 997, 71 L.Ed.2d 291 (1982); *Crawford v. Western Elec. Co.,* 614 F.2d 1300, 1309 (5th Cir. 1980); *Mescall v. Burrus,* 603 F.2d 1266, 1271 (7th Cir. 1979); *Detroit Police Officers' Ass'n v. Young,* 608 F.2d 671, 692 (6th Cir. 1979), *cert. denied,* 452 U.S. 938, 101 S.Ct. 3079, 69 L.Ed.2d 951 (1981); *Chicano Police Officer's Ass'n v. Stover,* 552 F.2d 918 (10th Cir. 1977). Two courts, including this one, have indicated otherwise. *See Davis v. County of Los Angeles,* 566 F.2d 1334, 1340 (9th Cir. 1977), *vacated as moot,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); *Kinsey v. First Regional Securities, Inc.,* 181 U.S.

App.D.C. 207, 215 n.22, 557 F.2d 830, 838 n.22 (1977). The Supreme Court's holding that § 1981 was passed pursuant to the thirteenth amendment, *see Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968); *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 287–88, 96 S.Ct. 2574, 2582–2583, 49 L.Ed.2d 493 (1976); *City of Memphis v. Greene,* 451 U.S. 100, 125 n.38, 101 S.Ct. 1584, 1599 n.38, 67 L.Ed.2d 769 (1981), may cast some doubt on the need for a full intent requirement for § 1981 because legislation passed pursuant to the thirteenth amendment may address not only intentional discrimination but also the badges and incidents of slavery, *see Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 440, 88 S.Ct. 2186, 2203, 20 L.Ed.2d 1189 (1968).

A. *Fizer.* Plaintiff Fizer claims that WMATA discriminated in refusing to grant him salary increases and in discharging him. The court below found that he had not established his prima facie case because he had not shown that he satisfied the normal performance requirements of his job, and that in any event he had not proved discrimination. Though there was conflicting evidence and the jury could reasonably have found the other way, we are satisfied, under the strict standard governing the trial judge and us, that there was also sufficient evidence for the jury to find as it did.

Since 1973, Fizer had been the Supervisor of the Consumer Assistance Section of WMATA. His performance evaluations for 1973, 1974, and 1975 were all excellent. According to testimony presented for him by three witnesses, he dealt well and effectively with consumers, his staff, and other offices within WMATA, and competently performed his job tasks. Subsequent to his dismissal, he taught a course on management skills and his performance there was rated "very good". He testified that he had not been counseled regarding slipping performance in 1976, and the jury could have believed him as against his supervisors who testified to the contrary. There is no doubt that some problems began to arise in his section in 1976, but on the evidence the jury could have justifiably attributed these problems, in large part, to the greatly increased workload occasioned by the opening of the rail system, and the almost simultaneous reduction in his staff. In fact, the grievance panel that processed Fizer's step increase grievance, though it delayed the increase, found that some of his performance problems resulted from the poor management techniques of his immediate supervisor. Later, when Fizer was reevaluated as ordered by the grievance panel, it appears that Warrington (a supervisor and the evaluator) may have disregarded the criterion the panel specified was to be used, and reintroduced some of the deficiencies that the panel had rejected as insufficient to justify withholding the step increase.[4]

It is true that none of the witnesses for plaintiff (except Fizer himself) was familiar with Fizer's official job description, nor could they testify to his competence in all aspects of his job. These omissions, cited by the District Court, are insufficient to destroy those witnesses's favorable evidence, though of course they go to its weight. In the real world, it would be impossible, or at least overly difficult, to impose a requirement that an employee trying to show his qualifications or performance must supply direct evidence from some third party who was both aware of all the required duties and had personal knowledge of all the employee's performance. Almost no one outside the employee and his supervisor knows the full details of the job description. It was up to the jury to evaluate the credibility and weight of the evidence given on behalf of each side.

We think, therefore, that there was enough evidence for the jury to find Fizer qualified and adequately competent, despite his supervisors' contrary view. Could the jury also have inferred that the ultimate denial to Fizer of a step increase and his subsequent discharge came about because of racial discrimination? There was no direct evidence of racial animus (aside from Fizer's own supposition) but there was likewise no other explanation (except reiterations of his lack of qualifications) for the supervisors' action against an employee implicitly found by the jury to have been competent. A witness for plaintiff testified that, from about August 1977 on, Fizer was thwarted and criticized at every turn; Fizer himself testified that his supervisors (especially Warrington, a white) were hostile and unhelpful. The jury, whose province it was, could disbelieve the two supervisors' testimonial explanation of why they acted against Fizer and that they tried to help him, and thus could find their asserted jus-

---

**4.** Fizer testified that he had protested that Warrington's position was inconsistent with the grievance panel's decision but that Warrington replied: "I don't give a damn what the grievance committee said. This is my shop and I run it the way I want to run it." Warrington denied saying this, but the jury was entitled to believe Fizer.

tification to be pretextual. It was undisputed that Fizer became upset and moody, but the jury could believe (as Fizer thought) that this resulted from unfair and discriminatory treatment. The sum of it is that there was enough, under the criterion we must apply, on which a reasonable jury could base its verdict.

B. *McNair.* Plaintiff McNair alleged that WMATA discriminatorily attempted to eliminate his position in order to save the job of a white employee. The District Court dismissed McNair's claim because he "failed to present any evidence whatsoever of racial discrimination". The record indicates otherwise. Neither the draft nor the final version of the budget called for the elimination of McNair's position; both deleted a different position, that of a white worker. No explanation was given for the apparent decision by his superiors to eliminate his position instead. WMATA argues that it was McNair's job all along that was scheduled for elimination, but the evidence was sufficient for the jury to believe otherwise.[5] Other facts, as well, tend to show discrimination. After McNair was promoted to the position of his former supervisor, the term "supervisor" was dropped from the title. The only change that had occurred was that a black now held the job. The defendant has not even offered an explanation for this change in designation, much less presented evidence that makes the finding of discrimination unreasonable.

That McNair was ultimately promoted to a different position and since has received all raises and experienced no unfair treatment does not prevent him from recovering if he suffered race discrimination at one point. It is settled that plaintiffs may recover compensatory damages

under § 1981. *See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). His request, as part of compensation, for damages for the pain and distress he suffered during the period he was scheduled to be laid off is not challenged by WMATA.

C. *Armwood.* Applying the standard for a prima facie case enunciated by this court in *Bundy v. Jackson,* 205 U.S. App.D.C. 444, 461, 641 F.2d 934, 951 (1981),[6] to Armwood's assertion of discriminatory failure to promote, the District Court threw out the jury's finding, holding that Armwood failed to prove that he satisfied the requirements of the jobs he sought. Plaintiffs fairly bear the burden on each element of the prima facie case. The prima facie case does not, however, require that each of the elements be established irrebuttably, only that enough evidence be presented to convince the factfinder that, more likely than not, the elements are proved, *see Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, n.7, 101 S.Ct. 1089, 1094, n.7, 67 L.Ed.2d 207 (1981). The defendant can disprove (*i.e.,* present evidence showing that it is not more likely than not) any of the elements, thus negating the prima facie case itself, or it can articulate some legitimate, non-discriminatory reason for its action, thus presenting ground for negating the inference of impermissible discrimination and calling upon the claimant to prove his case.[7]

The court below said that Armwood's prima facie case failed because he did not show fulfillment of the educational prerequisites for any of the jobs. He testified, however, that he had completed three years of college and all of law school. The court

---

5. Warrington, the supervisor, testified that he kept from the budget office the name of the employee scheduled to be reduced, leaving that office to guess at the name, and he testified they guessed wrong in listing the white worker. There was no other support for this version.

6. The minor adjustment necessary to adapt the *McDonnell Douglas* formula to the alleged failure to promote did not change the second element ("qualified") of the prima facie case.

7. The burden of proof does not shift to the defendant, it remains with the plaintiff, *see Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); nor does "articulate" mean more than it says, *see id.* at 254–55, 101 S.Ct. at 1094–1095; *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978).

also said that he had not shown that he fulfilled the experience requirements of the jobs that he did not receive. Yet, he testified to the nature of the duties involved and to his experience doing that sort of work. Furthermore, his performance evaluation in 1971 (before the problem arose) was "highly satisfactory". He also testified, as to one of the two jobs he sought, that the white woman who received the job was less qualified than he. Other evidence could bolster the jury's perception of discrimination. Armwood had been active in equal employment matters. Negative performance evaluations had been kept from him (in violation of WMATA policy) and his step increases were withheld until he made written complaints. After he successfully prevented the second attempt to delay his salary step increase, he was reassigned to a position from which the previous employee had been discharged by reduction-in-force. Within two years, Armwood too was scheduled for elimination, but for two more years he was not notified of that fact even though he asked specifically if his position was in jeopardy. His evidence, taken all together, raises the inference of discrimination, which the jury could accept. It is not fatal to his claim that he did not describe in detail all the job duties and his corresponding qualifications. He described the job he applied for, and averred that he had done that type of work. WMATA had the opportunity to negative his fitness for the positions and did not do so. Defendant calls our attention to no evidence strongly indicating that Armwood was not qualified. On this record, in short, the jury could reasonably find both that a prima facie case had been made and that discrimination existed.

D. *Battle.* Plaintiff Battle claimed that, after he was hired, his position was discriminatorily downgraded from Graphics Information Specialist to Graphics Information Assistant. His testimony was that he was interviewed and hired for the position of Graphics Information Specialist, but before he began working the title was changed to Assistant. He also testified that elsewhere within WMATA a white person with less graphics training continued to be classified as a Graphics Information Specialist, and held a higher grade level. Downgrading a job because the holder is a black plainly constitutes illegal discrimination within the ambit of § 1981; that claim cannot be dismissed for failure to state a remediable claim. As for the evidence, Battle showed facts sufficient to establish a prima facie case of discrimination on initial employment. The jury could determine that WMATA, which offered no explanation for the discrepancy between Battle and the other graphics employee or for the change in Battle's initial position, was discriminating. Here, too, that Battle received the normal step and grade increases, and one merit increase, does not prevent recovery if his initial status was determined discriminatorily.

E. *Summary.* The four individual plaintiff employees have each presented enough specific facts to make their prima facie cases of discrimination; WMATA's evidence was either wholly unresponsive or, to the extent it articulated a reason for the employer's action, could be believed by the jury to be overborne. Under the stringent standard we are compelled to apply to jury verdicts, these verdicts of discrimination must stand as reasonable. The absence of overtly racist statements or action by this quasi-governmental agency is not sufficient to overturn the jury. *See Ramirez v. Sloss,* 615 F.2d 163, 168 (5th Cir. 1980). The District Court seemed impressed that no third-party witness testified to having specifically seen discrimination practiced against the four individual plaintiffs. But the issue of discrimination was for the jury, not the judge, and the absence of direct evidence of this specific kind is not determinative. A reasonable jury could apply commonsense and general experience to the hard facts it found.

We add, as to the individual monetary judgments in favor of each of the four individual plaintiffs, that WMATA does not attack the particular amounts of the awards, nor does it contest the award of damages for pain, suffering, and emotional distress.

## II. THE CLASS ACTION

The plaintiffs (especially Metrocare) also claim that WMATA pursued a "pattern or practice" of racial discrimination toward its non-union (TA-rated) black employees in employment matters. For a suit under § 1981 this would presumably be a class action on behalf of the TA-rated employees. The jury found specifically (*see* footnote 2, *supra*) "that by a preponderance of the evidence WMATA has intentionally engaged in a pattern of [sic] practice of race discrimination toward TA-rated employees in employment matters dealing with internal employment practices such as promotions, award of step increases, selection of jobs for reductions in force, disciplinary matters, job grading." The District Court, holding that no reasonable jury could have concluded that WMATA intentionally discriminated against the class of black TA-rated employees, set aside the verdict. On this facet of the case, we uphold the court below.

 In the types of employment discrimination prohibited, section 1981 is at most co-extensive with Title VII.[8] *See, New York City Transit Authority v. Beazer,* 440 U.S. 568, 584, 99 S.Ct. 1355, 1365, 59 L.Ed.2d 587 (1979). To support a finding of discrimination against blacks as a group, a plaintiff must present sufficient evidence to raise an inference of class-wide discrimination (as opposed to individual, isolated, sporadic incidents, *see Teamsters, supra,* 431 U.S. 324, 336, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396), although it is not necessary that all members of the class suffer discrimination, *see id.* at n.16. Here, plaintiffs' evidence is of three sorts: (a) general evidence purporting to show that such discrimination

occurred; (b) a number of individual instances of actual discrimination; and (c) statistical evidence. We find these components wanting as presented in this case, singly and in combination. Here, they do not amount to a prima facie case of class discrimination.

A. The former director of WMATA's Office of Civil Rights testified that in his view there was a pattern of discrimination against minorities. He based his position on the number and nature of discrimination complaints that came to his attention during the 15 months he worked at WMATA, the attitude of department heads regarding equal employment matters, and the inadequacy of WMATA's affirmative action plan in providing for upward mobility. In the absence of support from specific facts,[9] these subjective generalizations cannot sustain the jury's verdict of intentional class discrimination, just as an individual's conclusory testimony that he was personally discriminated against would be valueless if unsupported by specific facts of his qualification for the job.

Plaintiffs likewise stress that the power to make decisions regarding internal employment at WMATA was concentrated in the hands of a predominately white managerial class, and that the standards they used were imprecise and subjective. But this factor, to the extent it is relevant, can apply at best only where the proof adequately shows a negative disparity in the employment or promotion opportunities of blacks[10]—and we point out *infra* that there is no such proper proof here.

B. Sufficient individual instances of discrimination could show a pattern of discrimination. But if individual cases of dis-

8. Section 1981, which protects the right to make contracts, *Runyon v. McCrary,* 427 U.S. 160, 170, 96 S.Ct. 2586, 2594, 49 L.Ed.2d 415 (1976), may cover contracts other than the employment contracts blanketed by Title VII.

9. There was, for instance, no direct evidence of a discriminatory promotion or employment policy and, as we discuss below, the statistical proof was inadequate, as was the number of persons shown to have been discriminated against.

10. *See Hazelwood School District v. United States,* 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977); *Rowe v. General Motors Corp.,* 457 F.2d 348 (5th Cir. 1972); *Brown v. Gaston County Dyeing Machine Co.,* 457 F.2d 1377 (4th Cir.), *cert. denied,* 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972); *Marimont v. Califano,* 464 F.Supp. 1220 (D.D.C.1979). *See also Pouncy v. Prudential Ins. Co. of America,* 668 F.2d 795 (5th Cir. 1982).

crimination are to show discrimination against the class as a whole, the number of instances must be significant when compared to the number of persons in the class. The court must focus on the ratio of the number of instances proved to the size of the class. The higher that ratio, the more likely discrimination has occurred against the class as a whole. In this case, that ratio is too low even to establish a prima facie case. For the six years covered by the facts presented, discrimination was proved against at most six persons,[11] while the class represented by Metrocare included over 400 persons. That small percentage does not tend to show class-wide discrimination.

◼ C. Proper statistical evidence can be the most important vehicle for showing class discrimination, but in this case plaintiffs' numbers are inadequate. Whether the charge be disparate racial impact or disparate racial treatment, the statistics— to be useful—must tend to show a result in which blacks suffer a disadvantage through management's practices and policies.[12] To do that, the statistics must compare the percentage of blacks hired for given jobs with the percentage of blacks qualified for those positions. For some jobs, no particular qualifications are needed, and an appropriate comparison group would be the local population in general. See Teamsters, supra, 431 U.S. at 340 n.20, 97 S.Ct. at 1856 n.20. But when the posts require managerial capability or other expertise, the comparison group must be the set of available minority persons with that expertise or qualification. See Mayor of Philadelphia v. Educational Equality League, 415 U.S. 605, 620–21, 94 S.Ct. 1323, 1333–1334, 39 L.Ed.2d 630 (1974); Hazlewood School District v.

United States, 433 U.S. at 308 n.13, 97 S.Ct. at 2742 n.13 (1977); New York City Transit Authority v. Beazer, 440 U.S. at 586 n.29, 99 S.Ct. at 1366 n.29. It is not enough, for example, to prove that blacks form a smaller percentage of the managers than they do of all employees in a given firm, unless there is also a showing that within the black employees the portion of persons qualified for the higher type of position is significantly greater than the portion now holding those jobs.

In this respect plaintiffs' prima facie case wholly fails. The major claim of class discrimination is that the managerial strata contained too few blacks.[13] But the plaintiffs' statistics do not compare the proportion of blacks in upper positions of WMATA to the percentage of blacks qualified for those jobs. Instead, the comparison is between the proportion of blacks in the top positions (15–20%) and the percentage of blacks in all non-union (TA-rated) positions in WMATA (40%). The non-union (TA-rated) positions include secretarial and clerical, as well as managerial jobs. Without some showing (or even a basis for a reasonable assumption) that the persons now holding secretarial or clerical jobs are qualified for the managerial positions, the composition of the entire non-union WMATA workforce is simply not relevant to the ratio of blacks in managerial jobs. There was no presentation by plaintiffs of a valid comparison group to which the percentage of blacks employed in the higher positions could be compared. It follows that there was no need for WMATA to rebut an inference of class-wide discrimination, though it did present evidence on that point.[14]

The result is that the judgment of the District Court is upheld with respect to the

---

**11.** The four individual plaintiffs plus two other employees who testified to their own experience but were not plaintiffs.

**12.** In disparate impact cases, proper statistics can show that the employer's policies, however neutral on their face, are discriminatory in effect; in disparate treatment cases, proper statistics can raise an inference that the employer acted with discriminatory intent.

**13.** There is no claim of general underrepresentation of blacks in the TA-rated group, taken as a whole. Nor are there any comparative statistics with respect to denial of step increases, reductions-in-force, or discipline.

**14.** We do not spell out WMATA's countervailing evidence, which was substantial, in view of plaintiffs' failure to present an acceptable prima facie case of class discrimination.

claim of class (*i.e.* pattern or practice of) racial discrimination,[15] and reversed with respect to the jury's verdicts as to the four individual plaintiffs which verdicts are reinstated.

*Affirmed in part; reversed in part.*

---

15. This court recently decided against another claimant a comparable class action gender discrimination suit. *Valentino v. United States Postal Service,* 674 F.2d 56 (D.C.Cir.1982) (*see* Part II of that opinion, "The Class Action").