Sylvia ANDERSON

v.

**GROUP HOSPITALIZATION,
INC., Appellant.**

No. 85–6107.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 17, 1986.
Decided June 12, 1987.

John R. Erickson, with whom Charles J. Steele and Diane E. Burkley, Washington, D.C., were on the brief, for appellant.

James H. Heller, for appellee; Irving Kator, Washington, D.C., entered an appearance for appellee.

Before STARR and WILLIAMS, Circuit Judges, and GREEN,* District Judge.

Opinion for the Court by District Judge JOYCE HENS GREEN:

JOYCE HENS GREEN, District Judge:

Sylvia Anderson brought suit against her former employer, Group Hospitalization, Inc. (GHI), claiming that her July 1981 resignation from that company's employ was the coerced product of unlawful racial discrimination. She sought damages and equitable relief under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Appellant GHI now challenges the jury verdict entered in favor of Anderson on her section 1981 claim, and the District Court's entry of judgment in her favor in her Title VII action, on the grounds that (1) the District Judge erred in instructing the jury to consider certain numerical or statistical data as evidence of discrimination; (2) that the instruction accompanying this evidence was vague and inadequate; (3) that the trial court erred in not granting GHI judgment notwithstanding the verdict, and in finding for Anderson on her Title VII claim; (4) that the trial judge impermissibly granted Anderson double back pay; and (5) that the lower court improperly ordered Anderson reinstated. As we find all of appellant's contentions, save for that concerning the double back pay award, to be without merit, we affirm the jury's verdict as to Anderson's section 1981 claim and the District Court's judgment on her Title VII action, and remand the case for the limited purpose of recalculating the damage award entered under the latter statute.

---

* United States District Judge Joyce Hens Green sitting by designation pursuant to 28 U.S.C. § 292(a).

**I**

Anderson, a black woman, began working for GHI in 1972 as a Grade 4 clerk and, by May 1978, had become a Grade 10 assistant supervisor, responsible for overseeing the work of a secretary and a clerk in the Clerical Section of the Marketing Services Department. During this time she received ratings of "competent" or better. In October 1979, Kay Viverette, the department manager, asked Anderson to transfer to the Small Group Section to be an assistant supervisor. Promotions within the department were noncompetitive and based solely on the subjective judgments of the selecting managers. Anderson, whose work at GHI had been in membership services, had no previous sales experience, but Viverette anticipated that she could acquire these skills on the job, and placed her in charge of six telephone sales and service representatives, a field representative, a secretary, and a clerk typist.

Several months before this promotion, GHI's marketing division underwent a major reorganization in response to declining enrollment, and its vice-president, David Kestel, demanded a new, more aggressive sales policy. In view of these changes, Kestel announced a revised ratings policy under which all personnel would be graded "competent" until they proved themselves deserving of a higher rating. One month after her promotion, and again in a six-month interim review, Anderson received a rating of "competent plus" from Viverette. Although Anderson had at times received "superior" evaluations in her previous positions, Viverette's ratings placed Anderson in the above-average category under the new system, for a job she had only recently assumed. Indeed, in her June 1980 evaluation, Viverette indicated that she would recommend Anderson for promotion. Not surprisingly, Anderson thought the appraisal was fair. Trial Transcript at 275. In the spring of 1980, Anderson's immediate supervisor, Reba Sue Dodd, left GHI and recommended that Anderson replace

her. Dodd, a white woman, had worked well with Anderson, consulting with her regularly, inviting her to staff meetings, and sharing supervisory responsibilities with her. Viverette instead chose Susan Feist, a woman outside the department with whom she had previously worked. Like Anderson, Feist had neither a college degree nor any prior sales experience before joining the Small Group Section.

Feist, who considered herself a "tough" supervisor, was described by witnesses as loud and frequently profane-a persona she apparently chose not to temper on the witness stand, where she was characterized by the trial judge as "overbearing and authoritarian." *Anderson v. Group Hospitalization, Inc.*, 621 F.Supp. 943, 945 (D.D.C. 1985). Five months after becoming her supervisor, Feist prepared Anderson's November 1980 performance evaluation and rated her "competent." While questioning appellee's ability to cope with change and complaining that she was not flexible or aggressive enough, Feist recommended that Anderson receive an eight percent salary increase and checked the box indicating that she would recommend her for a promotion. Anderson received the evaluation in January 1981 and registered no complaints.

Two months later, Feist prepared an interim appraisal in which she rated Anderson "marginal." According to GHI, the review was triggered by Anderson's failure to improve in the areas of concern discussed with her when she received her November 1980 evaluation. At a meeting held to discuss the March 1981 evaluation, Feist and Viverette told Anderson that supervision of sales personnel was not one of her strengths and that she might advance more readily in a different area of the company. Viverette advised her that if she transferred out of the group, the marginal review would not be placed in her personnel file. Anderson responded in a March 19, 1981 memorandum in which she asked Viverette for her help in obtaining no less than a lateral transfer. Viverette agreed to make inquiries, but testified that these proved fruitless.

Anderson requested a meeting in April to discuss her performance since the March appraisal. Feist stated that she had improved in some areas and not others and asked Anderson to keep a log of her daily activities to see how she spent her time. In July, Viverette prepared another interim evaluation, again rating Anderson as "marginal." Feist and Viverette met with her on July 10, informed her of the rating and gave her the option of resigning or being discharged. Viverette advised her that there were no lateral transfer positions available. Anderson elected to resign.

These events were placed before the jury. In addition, Anderson offered certain remarks concerning race made by Feist. These included Feist's comment "You people can't agree on anything," made to three black employees who could not agree on a point in a staff meeting; her statement that she would not date blacks because her father did not like them; her statement "My best friend is black"; and her comment to a black female employee that she liked the woman's hair straight rather than in a "natural jheri curl." Anderson also offered the contested statistical evidence from which, she contended, it could be inferred that blacks were underrepresented in managerial positions. In the marketing department, where 46 percent of the employees were black, only 14 percent of the supervisory posts were held by blacks. Finally, Anderson pointed out that four white employees whose performances were in question were transferred and demoted without a loss of pay at approximately the same time she sought, but was unable to make, a similar transfer.

## II

Both section 1981 and Title VII disparate treatment causes of action require proof of intentional discrimination. *See General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (section 1981); *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977) (Title VII disparate treatment claims). The requisite "discrimi-

natory animus, however, can be demonstrated through either direct or indirect evidence." *Carter v. Duncan-Huggins, Ltd.,* 727 F.2d 1225, 1231 (D.C.Cir.1984). In the trial below, Anderson offered both types of evidence, some of which GHI contends was irrelevant and all of which it insists was insufficient to support the verdicts entered by the jury on her section 1981 claim or by the judge on her Title VII claim. We address these contentions in turn.

## A. *Anderson's Statistical Evidence*

GHI argues vigorously that Anderson's statistical evidence was at best irrelevant and at worst misleading, and that the trial judge's instruction to the jury concerning that evidence was hopelessly and impermissibly vague. We cannot agree.

Anderson offered evidence showing that while blacks accounted for 46 percent of the department's workforce, they held only 14 percent of its supervisory positions. GHI contends that this evidence is meaningless; the relevant comparison is not the proportion of blacks in managerial positions to the proportion of blacks in the department generally, but rather the percentage of black supervisors compared with the percentage of *qualified* blacks in the division. Forty-six percent of the department may have been black, GHI argues, but not all of these people were qualified to be supervisors. Appellant is correct that no inference of unlawful racial animus

can be drawn from a statistical comparison that fails to account for relevant job qualifications. " [W]hen the posts [in question] require managerial capability or other expertise, the comparison group must be the set of available minority persons with that expertise or qualification." *Metrocare v. Washington Metropolitan Area Transit Authority,* 679 F.2d 922, 930 (D.C.Cir. 1982); *see also New York City Transit Authority v. Beazer,* 440 U.S. 568, 586 n. 29, 99 S.Ct. 1355, 1366 n. 29, 59 L.Ed.2d 587 (1979); *Hazelwood School District v. United States,* 433 U.S. 299, 308 n. 13, 97 S.Ct. 2736, 2742 n. 13, 53 L.Ed.2d 768 (1977). GHI's contentions before this court are unavailing, however, because it failed to object to the introduction of this evidence below, and admission of Anderson's comparison does not rise to the level of plain error.[1]

It is undisputed that at the time Anderson offered her statistical comparisons into evidence, GHI raised no objection. In its brief and at oral argument, appellant acknowledged that this was a conscious, calculated decision. The case had previously been tried before Judge Parker in December 1984 and had ended in a mistrial when the jury could not reach a verdict; as Judge Parker had admitted the statistical evidence, over objection, at the first trial, GHI decided that an objection at the second trial would serve no purpose other than to heighten the importance of this evidence in the eyes of the jury.[2] Absent plain error, however, a failure to object to the admis-

---

1. "Plain error" is an elusive standard. *See* 3A C. Wright, Federal Practice and Procedure § 856 (1982). This is particularly true in civil cases, where the standard is infrequently applied. *Compare Hobson v. Wilson,* 737 F.2d 1, 32 n. 96 (D.C.Cir.1984) (expressing some uncertainty as to whether in a civil case a court of appeals can ever reverse on grounds of a ruling to which no objection is made), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985) *with* D. Louisell & C. Mueller, 1 Federal Evidence § 22 (1977) (Federal Rule of Evidence 103 "makes the plain error principle fully applicable to civil cases" but generally courts appear to require a "grave error"). In any event, it seems clear that the rule relieves parties of the consequences of failures to object only in the most exceptional circumstances. *See, e.g., Dennis v. General Electric Corp.,* 762 F.2d 365, 367 (4th Cir.1985) (rule requires "exceptional circumstances ... such as

when the error is so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired"); *Wilson v. Attaway,* 757 F.2d 1227, 1242 (11th Cir.1985) (rule allows reversal only where there has been a "miscarriage of justice"); *Hobson,* 737 F.2d at 32 n. 96 (if reversal permissible at all, error must meet an "exacting standard").

2. GHI's argument is simply incorrect. The company had the option of submitting a motion *in limine* or lodging its objection at a bench conference held out of the hearing of the jury, both of which would have preserved the issue for appellate review without calling the jury's attention to the matter. For whatever reason, GHI apparently forsook these simple avenues of relief.

sion of evidence normally amounts to a waiver of the right to challenge its admission on appeal. *United States v. Collins,* 690 F.2d 670, 674 (8th Cir.1982); *United States v. Kilburn,* 596 F.2d 928, 935 (10th Cir.1978), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1517, 59 L.Ed.2d 782 (1979). "Ordinarily, a party should not be permitted to stand silently by and later to contest the admissibility of crucial evidence only after the fact finding has gone against him." *DiPaola v. Riddle,* 581 F.2d 1111, 1113 (4th Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). That is precisely what GHI has attempted to do here. Having made an apparently unsuccessful tactical decision below, GHI now seeks to disclaim responsibility for its failed strategy and shift the blame to the trial judge. Even those hostile to the concept of waiver, however, recognize its applicability to such calculated trial stratagems.[3]

■ Nor is this a case where the admission of the evidence in question constitutes plain error. It is typically true that a simple comparison of the number of blacks in supervisory capacities with the number of blacks in a given company generally is not probative evidence of racial discrimination. Here, however, it is undisputed that GHI employed no objective criteria governing promotions within its marketing department, and that promotions were noncompetitive and left entirely to the purely subjective judgments of selecting managers.[4] In *Metrocare,* we noted that "[w]ithout some showing (*or even a basis for a reasonable assumption*) that the persons now holding secretarial or clerical jobs are qualified for ... managerial positions, the composition of the [company's] entire ... work-

force is simply not relevant to the ratio of blacks in managerial jobs." 679 F.2d at 930 (emphasis added). Here, where no objective, formally articulated barriers stand in the way of any given employee's promotion, an "assumption" that the marketing department's entire workforce constituted the relevant group of potential supervisors would not have been utterly unreasonable. *See also Davis v. Califano,* 613 F.2d 957, 964–65 (D.C.Cir.1979) (where there are no minimum necessary objective qualifications for position, comparison of number of women and men holding such position is relevant). This case may well stand at the outer boundaries of statistical relevance suggested by *Metrocare,* but GHI's contention that not everyone is cut from managerial timber, while perhaps true as a generalization, is simply insufficient, under the plain error standard, to overcome Anderson's showing that everyone within the company's marketing department could at least theoretically attain a supervisory position. GHI has not demonstrated that the admission of such evidence under the facts of this case was so plainly erroneous that we must reverse the jury verdict, notwithstanding appellant's failure to object to the statistics at the time they were offered into evidence.

■ GHI also urges reversal on the ground that the trial judge's instruction accompanying this evidence was hopelessly confusing and failed to provide even the barest legal guideposts. This lack of guidance was all the more egregious, GHI insists, in view of the fact that the jury was "almost certain" to have attached greater weight to the statistics than they deserved. Appellant's Brief at 30. In his instruction,[5]

**3.** In their treatise, Wright and Graham argue that the concept of "implied waiver" is a fiction, since a waiver requires an intentional relinquishment of a known right or privilege. To infer such a knowing relinquishment from a mere failure to act, they contend, is simply fallacious. 21 C. Wright & K. Graham, Federal Practice and Procedure, Evidence § 5033 (1977). Here, GHI concedes that it knowingly and deliberately chose not to object to the contested statistical evidence.

**4.** The facts of this case attest to the complete lack of formal promotion criteria: Sylvia

Anderson and her two supervisors, Reba Sue Dodd and Susan Feist, all lacked college degrees; both Anderson and Feist had no prior sales experience when they were placed in charge of sales personnel.

**5.** Judge Parker instructed the jury as follows:

The plaintiff has offered and relies upon certain numerical information and data on the racial composition of the work force at Group Hospitalization at various times and argues that it shows different treatment of blacks as compared to whites. Such testimo-

Judge Parker advised the jury that it was free to give the statistics whatever weight it chose in its deliberations. In view of the fact that the statistics were offered as circumstantial evidence of discrimination, we see nothing improper in this instruction. GHI's primary contention on appeal is that the jury should not have considered the evidence at all, as it was essentially irrelevant. Our previous discussion disposes of this argument. The evidence was admitted without objection and it was relevant. Judge Parker merely instructed the jurors to determine whether it was persuasive or not, and to weigh it along with all the other evidence in the case.

■ GHI argues, however, that the evidence was admitted without the mathematical safeguards that normally accompany statistical evidence. Thus, for example, the jury was left to guess at the significance of the statistical disparity, and was given no guidance as to the relevant sample size or other indicia of statistical reliability. Anderson, however, had proffered an expert at trial whose testimony could have cured these alleged deficiencies, but GHI objected.[6] Appellant cannot move to exclude evidence concerning the reliability and significance of certain statistics and then seek reversal because such evidence was lacking. Moreover, where "a party challenges statistical data as flawed, that party bears the burden of showing that the errors or omissions in the data are likely to

change the result." B. Schlei & P. Grossman, *Employment Discrimination Law* 1368 (2d ed. 1983). Here, GHI has offered nothing more than its own unsubstantiated conviction that, given the "magic" associated with numbers, the jury was "almost certain" to have given Anderson's statistics greater weight than they deserved. Nothing prevented GHI from marshalling its own statistical evidence during the trial, or from offering its own expert to demonstrate the invalidity or unreliability of Anderson's evidence. Instead, appellant raised no objection to the introduction of the evidence, failed to challenge or rebut that evidence, and successfully objected to testimony from Anderson's expert which might have shed additional light on its significance. Having attempted to keep the jury in the dark as to the probative value of Anderson's statistics, GHI cannot now complain that the trial judge failed to give the jury adequate guidance in assessing that evidence. Rather, the trial judge would have erred had he failed to mention this relevant evidence altogether in his instructions.[7]

## B. *The JNOV Motion*

■ GHI also insists that the District Court improperly denied its motion for judgment notwithstanding the verdict. Appellate review of a trial court's denial of a motion for judgment n.o.v. is narrow, limit-

---

ny and evidence is proper and the Court has accepted it.

You should consider this evidence along with all other evidence in the case and give it such weight as in your judgment you feel as jurors it is entitled to receive.

In considering the numerical information and data it is left with you as factfinders to determine whether the presentation designed to show disparate treatment was accorded workers, designed to show a different treatment for blacks as compared to white workers. It is left with you to determine as factfinders whether it is persuasive or not.

Trial Transcript at 250–51.

6. Anderson proffered as a witness a Dr. Cowan, a statistician whose proposed testimony was to cover the reliability of the sample size and the improbability that the disparity identified by Anderson's statistics would occur randomly. GHI objected on grounds of timeliness and relevance, claiming that it would be prejudiced by

the relatively late identification of Dr. Cowan as a witness. *See* Defendant's Motion *in Limine* and plaintiff's opposition thereto. GHI did have an opportunity to interview the witness, and Anderson's counsel suggested that he would waive his right to depose any expert GHI wished to call as an accommodation to GHI's counsel. *See* Trial Transcript at 370–71, 393.

7. GHI also makes much of the fact that Judge Parker told the jury that the court had "accepted" Anderson's statistical evidence. This choice of words, while perhaps somewhat ambiguous, does not amount to reversible error. Whatever the suggestion of court adoption or approval of the statistics this statement may have conveyed, it was more than dispelled by the remainder of the instruction, which made clear that the jury's assessment of the evidence, not the court's, controlled.

ed only to determining whether sufficient evidence was presented from which the jury could reasonably find for the non-moving party. *Grogan v. General Maintenance Service Co.,* 763 F.2d 444, 447 (D.C. Cir.1985). A motion for judgment n.o.v. should not be granted unless "'the evidence, together with all inferences that can reasonably be drawn therefrom [is] so one-sided that reasonable men could not disagree on the verdict.'" *Romero v. National Rifle Association of America, Inc.,* 749 F.2d 77, 79 (D.C.Cir.1984) (quoting *Vander Zee v. Karabatsos,* 589 F.2d 723, 726 (D.C.Cir.1978), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066 (1979)). The court must weigh the evidence in the light most favorable to the nonmoving party, and give her the benefit of every fair and reasonable inference. *Metrocare,* 679 F.2d at 924–25. A reviewing court is not to substitute its judgment for that of the jury, nor weigh the credibility of witnesses. *Duncan-Huggins,* 727 F.2d at 1227–28. GHI has fallen far short of satisfying this difficult burden.

Before this court, appellant does little more than reargue its case below. Thus, it contends that Susan Feist's four comments concerning race could not possibly be considered derogatory; that the decline in Anderson's performance evaluations after her promotion was gradual and steady rather than precipitous; that dissimilarities between Anderson's situation and that of the four white managers who were demoted without a pay loss render any comparison between their treatment and hers meaningless; and finally, that Anderson's statistical evidence was irrelevant. We need not dwell on these contentions at length. It is enough to note, for example, that a juror could reasonably conclude that Anderson's drop from a rating of "competent plus" in July 1980 (when her supervisor indicated she would recommend her for a promotion), to "marginal" just nine months later (when she was told to look for a new line of work), was precipitous. That this sudden change coincided with Ms. Feist's promotion and tenure could reasonably give rise to an inference of racial animus, particularly in view of Feist's predilection for making comments pertaining to race. Likewise, we cannot accept GHI's claim that Feist's comments could not possibly be viewed as racially derogatory. The meaning and intent behind such comments frequently turn on such subtleties as the context in which they are spoken, the tone and inflection of the speaker, and the relationship between speaker and listener. These matters, which cannot be gleaned from a cold record, were placed before the jurors, who had the opportunity to observe the demeanor of Anderson and her witnesses, as well as Feist herself.[8] Certainly we cannot say that no juror could reasonably infer racial animus from these comments, nor are we willing to declare, as a matter of law, that such comments could *never* give rise to such an inference. *See Duncan-Huggins,* 727 F.2d at 236 (single racial joke, together with other indicia of racial animus, is properly placed before jury as circumstantial evidence of discrimination). Finally, we note that a jury could reasonably disbelieve GHI's explanation as to why it was able to transfer without loss of pay four white supervisors who were not performing appropriately—three between January and March, 1981, and the fourth in October, 1981—while failing to relocate Anderson in March and April of that same year. Indeed, GHI's claim that unlike the white supervisors, Anderson sought a transfer as a marginal employee at the same time the company was relocating 126 competent workers displaced by the loss of contract, is inconsistent with its repeated statements that Anderson's marginal status would not be memorialized if she sought a transfer.

■ In short, while we as factfinders may or may not have drawn the same conclusion from the evidence that the jury

---

**8.** Judge Parker, who had the same opportunity, described Anderson as calm, poised, and clear thinking, while Feist was "overbearing and authoritarian," and given to selective memory lapses. *Anderson v. Group Hospitalization, Inc.,* 621 F.Supp. 943, 945, 947 (D.D.C.1985). In addition, Judge Parker noted that black workers in the Small Group Section perceived the comments as racial slurs and resented them. *Id.* at 945.

drew, we cannot say that no reasonable juror could reach the verdict rendered in this case. Thus, we conclude that the District Court properly denied the motion for judgment n.o.v. For these same reasons we find that the District Court's findings of fact and conclusions of law entered on Anderson's Title VII claims are not clearly erroneous, and we therefore affirm that judgment.

## C. *The Relief*

▆▆▆ Finally, GHI argues that even if we affirm the judgments below, we should nevertheless vacate the District Court's order of reinstatement and its award of back pay because the former will result in an intolerable work environment in the Small Group Section, and the latter awards Anderson a double recovery. We see no merit to the first of these claims. While it is perhaps true that feelings between Anderson and her former supervisors Viverette and Feist are such that no meaningful work relationship could be re-established, Judge Parker's order requires only that GHI reinstate Anderson to her former post or "an equivalent position." The fact that this litigation may have engendered ill will towards Sylvia Anderson on the part of GHI management generally is simply an insufficient reason to deny her the equitable remedial relief she sought and which the trial court, in its sound discretion, was entitled to award her. Such ill will is a frequent by-product of employment discrimination litigation and, standing alone, should not deprive a successful plaintiff of her right to hold a position she would otherwise have held but for her employer's unlawful action.

▆▆▆ GHI's concerns as to Anderson's potential double recovery, however, stand on a slightly different footing. Anderson does not claim that she is entitled to such an award; she seeks only to be made whole from the time she was forced to resign until such time as she is reinstated. In her section 1981 action, Anderson's entitlement to back pay was fully present-ed to the jury and Judge Parker instructed that, should the jurors find in Anderson's favor, they could award her such damages. In its January 11, 1985 verdict, the jury returned a judgment in the amount of $100,000, which necessarily included back pay. Judge Parker rendered his decision on Anderson's Title VII claims on October 23, 1985 and ordered that GHI pay her "all wage, retirement and other employment emoluments that would have accrued to her benefit as a Grade 10 Assistant Supervisor [from August 1, 1981] until January 1982 and as a Grade 11 Assistant Supervisor since that date." *Anderson*, 621 F.Supp. at 948. To the extent this order covers the period since the October 1985 judgment, it is an appropriate award of front pay. Similarly, to the extent the award compensates Anderson for the period between the jury's verdict on her section 1981 action and the judgment entered on her Title VII claims, it is a permissible award of back pay. As we read the order, however, it extends back in time to August 1, 1981 and thus duplicates the time period covered by the jury verdict. This portion of the order, therefore, grants Anderson a double recovery to which she is not entitled. Accordingly, we remand this case in order that the District Court may modify its order as to damages so as to avoid this award of double back pay.

## III

For all the foregoing reasons, we affirm the judgments entered in favor of appellee on both her section 1981 and Title VII causes of action, and remand this case to the District Court for the limited purpose of recomputing the damage award entered under the latter claim.

*So ordered.*