675 F.2d 398
 28 Fair Empl.Prac.Cas. 833,
28 Empl. Prac. Dec. P 32,657, 218 U.S.App.D.C. 379
 Martha S. FREEMAN, Individually and on Behalf of all others
Similarly Situated, Appellee,
v.
Drew LEWIS, Individually and in his Official Capacity as
Secretary, U. S. Department of Transportation, et
al., Appellants.
 No. 80-2584.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued 15 Jan. 1982.
Decided 13 April 1982.
As Amended April 13, 1982.
 
 Appeal from the United States District Court for the District of Columbia (D.C. Civil Action No. 76-01587).
 David H. Shapiro, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, Royce C. Lamberth and Kenneth M. Raisler, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellants. Robert E. Kapp and Marc Johnston, Attys., Dept. of Justice, Washington, D. C., also entered appearances for appellants.
 June D. W. Kalijarvi, Washington, D. C., with whom Ellen R. Delate, Washington, D. C., and George M. Chuzi, Washington, D. C., were on the brief, for appellee.
 Before MacKINNON and WILKEY, Circuit Judges, and CORCORAN,* United States Senior District Judge for the District of Columbia.
 Opinion for the Court filed by Circuit Judge WILKEY.
 WILKEY, Circuit Judge:
 
 
 1
 Plaintiff/appellee Martha S. Freeman, a fifty-seven year old white female, brought this action pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972.[1] She alleged that she was discriminated against by defendant/appellant (the Department of Transportation and various components thereof), her employer. The district court[2] found that plaintiff had presented a prima facie case of race and sex discrimination and that defendant had failed to meet the "burden of persuasion" which had been shifted to it. It therefore held for plaintiff. We reverse.
 
 
 2
 We note that the issues before us for review are limited, and our reasons for reversal quite specific. We do not quarrel with the district court's implicit finding that there was no showing of age discrimination,[3] nor with its explicit findings that there were no acts of reprisal against plaintiff and no discrimination against her with regard to work assignments and training.[4] The only question left in this case is whether plaintiff was denied promotion-to a GS-12 level job and, later, to a GS-13 level job-on account of race or sex. We reverse because, first, we do not believe that plaintiff demonstrated a prima facie case of such discrimination, and second, because the district court improperly placed a burden of persuasion, rather than production, on defendant to refute any prima facie case.
 
 
 3
 The Supreme Court, in Texas Department of Community Affairs v. Burdine, recently outlined a three-part sequence of the "basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment."[5] First, "plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination."[6] Second, the burden shifts to defendant " 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' "[7] Third, plaintiff then has an opportunity to prove by a preponderance of the evidence that the reasons articulated by defendant were but "a pretext for discrimination."[8] We turn first, then, to plaintiff's failure here to make a prima facie case, and later to the district court's failure to shift the proper burden to defendant under the second part of the Burdine test. Burdine had not yet been decided at the time the district court was pondering the case at bar, hence we have the advantage of illumination denied the district judge.
 
 I. ABSENCE OF A PRIMA FACIE CASE
 
 4
 The elements of a prima facie case were set out seminally in McDonnell Douglas Corp. v. Green.[9] Last year, in Bundy v. Jackson,[10] Chief Judge Wright outlined the proper way in which to apply the McDonnell Douglas test to promotion cases.
 
 
 5
 Adjusting the McDonnell formula to cases of discriminatory refusal to promote is relatively simple. Thus to make out a prima facie case the plaintiff must show (1) that she belongs to the protected group, (2) that she was qualified for and applied for a promotion, (3) that she was considered for and denied the promotion, and (4) that other employees of similar qualifications who were not members of the protected group were indeed promoted at the time the plaintiff's request for promotion was denied.[11]
 
 
 6
 The district court concluded that plaintiff was qualified for a promotion to level GS-12 effective June 1976,[12] and to level GS-13 effective June 1978,[13] and that she was discriminatorily denied the promotions. But if we apply the McDonnell/Bundy test, as the district court should have,[14] it is apparent that plaintiff has failed even to make a prima facie case.
 
 
 7
 The most obvious problems involve McDonnell/Bundy requirements # 2 and # 4. In particular, did plaintiff apply for the promotions, and were other members outside the protected group promoted at the time plaintiff's requests for promotion were denied?
 
 
 8
 With respect to the alleged delay in her promotion to GS-12, it appears from the trial record that only one vacancy occurred between the time she became eligible for that grade and when she was actually promoted to it, and that promotion apparently went to a white female.[15] Thus, plaintiff has clearly failed requirement # 4 here.
 
 
 9
 We are left then with whether plaintiff showed a prima facie case of discrimination in not being promoted to GS-13 at some point after June 1978, when she became eligible for the position. The district court found in its eighth and fifteenth Findings of Fact that plaintiff never applied for any position outside the GS "career ladder,"[16] and, again in its eighth Finding of Fact, that the career ladder extends only up to the GS-12 level. Thus it appears that plaintiff can show no prima facie case for her GS-13 non-promotion because she fails McDonnell/Bundy requirement # 2: she did not apply[17] for the position she sought.[18]
 
 
 10
 We are left with no claim by plaintiff for which-under the district court's Findings of Fact-a prima facie case could be made. Indeed, on reading the trial court's Findings of Fact we are left with the distinct impression that plaintiff was fairly treated and had no discrimination of which to complain. The court's Conclusions of Law following then came as a distinct surprise.Instructions on Remand
 
 
 11
 Although it appears very likely on the record that plaintiff cannot show a prima facie case, we are hesitant to reverse without remand when we are not the factfinders. On remand, however, we expect the district court to find for defendant unless it can point to evidence faulting one or both of these statements:
 
 
 12
 1. The only person promoted to a GS-12 level position which plaintiff was qualified for but denied was also a white female.
 
 
 13
 2. Plaintiff was required to apply for promotion to the GS-13 level job to which she claims to be entitled, but did not.
 
 
 14
 If both are true, then the district court must dismiss plaintiff's action.
 
 
 15
 We note that even if one or both are not true, there remain other serious questions about whether McDonnell/Bundy requirements # 2 and # 4 have been met. With respect to the application requirement in # 2, it may be that even the GS-12 promotion required at least bringing the matter of the denied promotion to some superior's attention.[19] To the extent some action-whether a formal application or not-was required on plaintiff's part for either promotion, if it was not performed then she has no prima facie case. Moreover, it is unclear whether plaintiff demonstrated that a vacancy was available in the first place for either promotion or, in the alternative, that one was unnecessary.[20]
 
 
 16
 There also remain questions about the qualification requirement in # 2:
 
 
 17
 The Supreme Court has noted that, as part of a prima facie case, the plaintiff must demonstrate that (her) rejection did not stem from "an absolute or relative lack of qualifications." A plaintiff who demonstrates that (she) possesses the absolute minimum qualifications for a job, therefore, does not necessarily make out a prima facie case; if the employer has indicated that certain additional qualifications are necessary or preferred, the plaintiff must demonstrate that (she) has those qualifications as well.[21]
 
 
 18
 Similarly, we have held that "plaintiff may be required to go beyond a showing of minimum qualifications to demonstrate that (she) possesses whatever qualifications or background experiences the employer has indicated are important."[22] Thus, the district court should look to see whether defendant has, as a matter of course, required service of a certain length of time[23] or some other qualification before promotion.[24] Since plaintiff actually did receive the GS12 promotion, she must show that the rate at which she was promoted was slower than the rate at which members similarly situated but outside of her class were promoted. Discrimination cannot exist in a vacuum; it must be relative to the way someone else is treated. Plaintiff conceded this principle at oral argument. It would be anomalous indeed to find a prima facie case of discrimination without some showing of this element.
 
 
 19
 Finally, if no one was promoted to the GS-12 level during the time plaintiff says she should have been, plaintiff has also failed to meet McDonnell/Bundy requirement # 4.
 
 II. BURDEN OF ARTICULATION OR PRODUCTION
 
 20
 We think that the district court also erred when it concluded that a showing by plaintiff of a prima facie case shifted not just a burden of production but a burden of persuasion to defendant. We discussed[25] that Burdine outlined a three-part sequence for the "basic allocation of burdens and order of presentation of proof" in Title VII cases. First plaintiff shows a prima facie case, second the burden shifts to defendant for rebuttal, and third the burden shifts back to plaintiff to show that the reasons given by defendant in its rebuttal were but a pretext for discrimination. The Court was quite clear in Burdine that the showings by plaintiff in parts one and three must be by a preponderance of the evidence, but that the burden on defendant in the second part was one of mere production, not persuasion.
 
 
 21
 The burden that shifts to the defendant ... is to rebut the presumption of discrimination (after the prima facie demonstration) by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. (Citation omitted.) It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.[26]
 
 
 22
 This seems clearly at odds with the district court's tenth Conclusion of Law that "(o)nce a Plaintiff establishes a prima facie case, the burden of persuasion shifts to the defendant," and its eleventh, that "Plaintiff has proven a prima facie case of discrimination. Since Defendants have failed to meet the shifting burden of persuasion in the instant litigation, Plaintiffs (sic) have met their ultimate burden of proof."
 
 
 23
 Thus, the district court must-assuming that on reanalysis of the record it does find a prima facie case-determine whether defendant has produced some evidence that the promotion was denied for a "legitimate, nondiscriminatory reason," as elaborated by the Supreme Court in Burdine.[27] If it determines that a prima facie case exists and the production burden has not been met, the court may hold for plaintiff. If the production burden has been met too, however, then it must proceed to the third step in Burdine, and consider whether plaintiff proved by a preponderance of the evidence that the legitimate reasons offered by defendant were not its true reasons, but a mere pretext for discrimination.
 
 III. CONCLUSION
 
 24
 We are reluctant to endorse additional fact-finding in this case, since there has already been a trial and findings of fact. We hope the district judge will be able to make the needed factual findings to which we have alluded from his own experience with the trial record-certainly he is in a better position to do this than are we, with only the cold transcript before us. He is also better situated to decide whether the parties had occasion but failed to present the evidence we now think critical, in which case he should conclude that the evidence is lacking and rule accordingly.[28] On the other hand, he may determine that he discouraged certain avenues from being explored because his conclusion of what was relevant and necessary differed from our findings of law today. In that case, he may have to call for additional evidence.
 
 Accordingly, the case is
 
 25
 Reversed and remanded.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 294(c) (1976)
 
 
 [1]
 42 U.S.C. § 2000e-16 (1976). See also note 3 infra
 
 
 [2]
 No. 76-1587 (D.D.C. 29 Oct. 1980) (order accompanied by Findings of Fact and Conclusions of Law)
 
 
 [3]
 Plaintiff's original complaint also included allegations under the Age Discrimination in Employment Act, 29 U.S.C. § 633a (Supp. III 1979), but the district court's implicit finding that plaintiff was not discriminated against on account of age is not before us on this appeal. See, e.g., Findings of Fact P 5. Plaintiff did not cross-appeal this issue, nor was it argued in her briefs
 
 
 [4]
 Findings of Fact P 12, P 13, P 14, and P 16
 
 
 [5]
 450 U.S. 248, 252, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (footnote omitted)
 
 
 [6]
 Id. at 252-53, 101 S.Ct. at 1093
 
 
 [7]
 Id. at 253, 101 S.Ct. at 1093 (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973))
 
 
 [8]
 450 U.S. at 253, 101 S.Ct. at 1093
 
 
 [9]
 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)
 
 
 [10]
 641 F.2d 934 (D.C.Cir.1981). See also Valentino v. United States Postal Serv., No. 81-1202, 674 F.2d 56, at 63-64 (D.C.Cir.1982)
 
 
 [11]
 641 F.2d at 951 (citing Kunda v. Muhlenberg College, 463 F.Supp. 294, 307 (E.D.Pa.1978), aff'd, 621 F.2d 532 (3d Cir. 1980))
 
 
 [12]
 The Whitten Amendment, Pub.L.No.82-253, 65 Stat. 758 (1951), limited the speed with which promotions could be made, even for qualified personnel. It is now embodied in 5 C.F.R. § 300.602 (1982). See also Federal Personnel Manual § 300, subchapter 6, at pp. 300-13 through 300-17
 
 
 [13]
 Apparently, these were the only instances of discrimination against plaintiff the district court found. Indisputably, they were the only two for which the district court granted plaintiff redress in its order of 29 October 1980, or mentioned in its Findings of Fact (see P 15). In Findings of Fact P 11, P 12, P 13, P 14, and P 16, the district court specifically found no discrimination in several other instances. In P 9, the district court found that at one point plaintiff was entitled to a GS-11 level job but applied for a GS-9 level job, and was therefore given a GS-9 job, albeit a one different from what she had requested. The district court intimated no discrimination in this assignment, and granted no remedy, so we infer that no discrimination was found
 
 
 [14]
 Plaintiff argues that the usual four-part McDonnell test need not be met here in order to show a prima facie case since the district court found that one of her supervisors was biased, putting her claim "on a different footing than other Title VII cases." Appellee's Brief at 22
 The district court apparently reached the same conclusion. The court found, in its ninth Conclusion of Law, that plaintiff had demonstrated "through testimonial evidence" a "pattern and practice" of discrimination against whites and women. Thus the court concluded that it was bound to "infer that this pattern and practice served to discriminate against Plaintiff." It cited International Bhd. of Teamsters v. United States, 431 U.S. 324, 360-62, 97 S.Ct. 1843, 1867-1868, 52 L.Ed.2d 396 (1977).
 We disagree. The district court's findings indicate bias in only one individual employer of plaintiff, and the promotions plaintiff was found to have been eligible for and denied were not available until after that employer had died. Findings of Fact P 6, P 15. We also note that the district court found that there was no convincing statistical evidence of discrimination (which, incidentally, distinguishes this case from Teamsters). Findings of Fact P 5; Conclusions of Law P 8. In light of the absence of either statistical or relevant testimonial evidence of discrimination, we deem it unsound to abandon the usual McDonnell/Bundy approach in this case. Thus, we need not reach the issue of when if ever in a private, non-class case the showing of a stated preference for one sex or race can, in the absence of statistical or direct evidence of an impact on actual hiring or promotion, justify the use of the pattern and practice approach. Cf. Bundy v. Jackson, 641 F.2d 934, 953 (D.C.Cir.1981) (McDonnell test modified but not abandoned even when harassment of plaintiff shown); Pettit v. United States, 488 F.2d 1026, 1033, 203 Ct.Cl. 207, 214 (1973) (same). Here, whatever evidence remains of defendant's "general policy and practice with respect to minority employment" is best left to the third part of the Burdine framework, plaintiff's attempt to show that defendant's reasons for not promoting her were merely pretextual. See McDonnell, 411 U.S. at 805-06, 93 S.Ct. at 1825-1826.
 
 
 [15]
 As defendant points out in its brief, page 14, plaintiff herself stated at trial that the only promotion to GS-12 at this time went to a woman. Trial transcript (Tr.), vol. 2 at 189. Defendant asserts in its brief that the woman was white and another witness asserted this at trial, id. at 257, but no finding of fact was made on this point. We expect the district court to do so on remand. See pp. 401-402 infra. (It is unclear what promotions are alluded to in the first sentence of Findings of Fact P 15.)
 
 
 [16]
 See also Conclusions of Law P 9 ("... Plaintiff has not unsuccessfully applied for a position for which she is qualified ...")
 
 
 [17]
 Note that since an application was not found necessary for a promotion to positions within the career ladder, the district court held that her non-application for these positions-e.g., GS-12-did not disqualify her. Conclusions of Law P 9. We agree, if indeed no action on plaintiff's part (whether a formal application or something else) was required. See p. 402 infra
 Similarly, with respect to McDonnell/Bundy requirement # 3-that plaintiff show "she was considered for ... the promotion"-if such consideration was to be automatic, plaintiff need not show it. On the other hand, if consideration is not automatic, then plaintiff must show that she was considered for the promotions she says she was discriminatorily denied.
 
 
 [18]
 Again, however, we are hesitant to conclude ourselves that all this is true when we are not the finders of fact. We expect the district court to make this determination on remand. See pp. 401-402 infra
 
 
 [19]
 See Findings of Fact P 11; Conclusions of Law P 8; Tr., vol. 2 at 201; id. at 249
 
 
 [20]
 Defendant stated at oral argument that a vacancy was necessary for a promotion to be made. This contention is supported by the district court's Findings of Fact P 8. See also Tr., vol. 2 at 201. Note that it may be necessary for a vacancy to be present in the budget if plaintiff is to get a pay increase even if the defendant is otherwise free to upgrade the responsibilities of plaintiff. We think it implicit that as a general proposition plaintiff must demonstrate that there exists a position to which she can be promoted if she is to fulfill McDonnell/Bundy requirement # 2. It is at best unclear whether plaintiff did so here
 
 
 [21]
 Aikens v. United States Postal Serv. Bd. of Governors, 665 F.2d 1057, 1059 (D.C.Cir.1981), cert. granted, --- U.S. ----, 102 S.Ct. 1707, 71 L.Ed.2d ---- (1982) (quoting International Bhd. of Teamsters v. United States, 431 U.S. 324, 358 n.44, 97 S.Ct. 1843, 1866 n.44, 52 L.Ed.2d 396 (1977))
 
 
 [22]
 Aikens, 665 F.2d at 1060
 
 
 [23]
 See, e.g., Tr., vol. 2 at 200-01 (testimony of one witness that "I stayed there (at GS-9) for a year and a half and I was due to go to my (GS-) 11. Usually, when you are promoted from a 9 to an 11, you can go faster than when you go from an 11 to a 12 ..."). Such requirements may go beyond those of the Whitten Amendment. See note 12 supra
 
 
 [24]
 Defendant stated at oral argument that promotions were neither automatic nor just a matter of time. The district court also seemed to recognize a distinction between being eligible for a promotion and being qualified for it. Findings of Fact P 1, P 9, P 15. (Note that while the district court found plaintiff to have been eligible for a promotion to GS-12 since June 1976, id. P 15, its order awarded back pay beginning only on 15 December 1976.)
 
 
 [25]
 Pp. 399-400 supra
 
 
 [26]
 450 U.S. at 254-55, 101 S.Ct. at 1094 (footnote omitted) (emphasis added)
 
 
 [27]
 Id. at 254, 101 S.Ct. at 1094
 For instance, as we have discussed, the defendant's contention-and the district court's finding-with respect to the GS-13 non-promotion is apparently that there was no promotion because there was no application.
 
 
 [28]
 For instance, with respect to her GS-12 promotion, if plaintiff had ample opportunity and notice to demonstrate that she was promoted at a rate slower than others, but did not do so, the district court should rule without further ado that no prima facie case was made