Carol FAIN, Plaintiff,

v.

The DISTRICT OF COLUMBIA, et al., Defendants.

Civ. A. No. 81–2548.

United States District Court,
District of Columbia.

March 21, 1983.

---

Neil B. Katz, Washington, D.C., for plaintiff.

Cary D. Pollak, Asst. Corporation Counsel, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

The plaintiff, Carol Fain, was employed by the District of Columbia Department of Corrections from April 9, 1979 until her discharge by a reduction in force in the summer of 1980. She worked as a correctional officer for the Department of Corrections from April 9—December 23, 1979, June 10–28, 1980, and September 21—October 14, 1980. In addition to a claim for advance sick leave, plaintiff has pursued a workmen's compensation action separate from this proceeding for the periods of her absence from work while employed at the Jail. Ms. Fain claimed in this action that the District of Columbia, and the superintendent and administrator of the District of Columbia Central Detention Facility (the Jail) discriminated against her because of her Caucasian race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (1976) and 42 U.S.C. §§ 1981, 1983 (1976). She sought damages in the amount of $1.25 million.

Specifically, plaintiff alleged discrimination in training, assignment, denial of advance sick leave, promotion, discharge, refusal to pay wages for 17 days of work, and recall of employees terminated by a reduction-in-force (RIF) directive. The Equal Employment Opportunity Commission (EEOC) issued a notice of right to sue on May 27, 1982 without taking action on plaintiff's EEOC charges.

A trial de novo was held on March 1, 2, 3, and 4, 1983. The Court heard testimony from plaintiff, Carol Fain; Portia Bolden, a former correctional officer at the Jail; Sergeant Linda Collins, a correctional officer at the Jail; Reverend James Johnson, a former correctional officer and union steward at the Maximum Security facility at Lorton; Major Thomas Gaydos, the senior officer at the Jail; James F. Williams, an official in the District of Columbia Office of Personnel; Loretta McKnight, an employee in the public safety cluster of the Office of Personnel; and Captain Dolciler Peter Roberts, a correctional officer who worked at the Jail in 1979. The Court also accepted the proffered, stipulated testimony of attorney Brice Henderson and correctional officers Boyd Armstead, Lieutenant Wilson and Lieutenant Carney. The parties stipulated that Ms. Fain was owed 17 days' back pay.

The Court enters judgment in favor of defendants and orders the District of Columbia to pay plaintiff 17 days' pay for the reasons set forth below.

I.

*Findings of Fact*

A. April 9—December 23, 1979

Ms. Fain began working at the Department of Corrections as a correctional officer on April 9, 1979. She received training for approximately five weeks at the Lorton Training Academy. She was the only white female. Her class included two white males, 19 black males, six black females, and one Hispanic female. Plaintiff's Exhibit (ex.) 24. Ms. Fain felt uncomfortable as the only white female officer, but did not express any complaints because she did not want to "make waves."

The Department of Corrections assigned Ms. Fain to the Jail, where she received on the job training. As a GS–6 probationary officer, plaintiff worked with a GS–8 senior officer when assigned to the housing units. Cynthia Coleman, one of at least three senior officers with whom plaintiff worked frequently, expressed hostility about Ms. Fain in racial terms and failed to support her in several instances when Ms. Fain sought to discipline prisoners. Officer Coleman is black. On at least one occasion, Captain Roberts, also black, reprimanded Ms. Coleman for failing to support her fellow officer. Plaintiff did not complain of racial slurs from other senior officers or from any of her colleagues.

Ms. Fain received many assignments not involving inmate contact, such as manning the staff entrance, mail room, infirmary control, and floor control. Those duties were regarded as easier than the more common housing unit assignment. One white officer, Lieutenant Carney, told plaintiff she probably wouldn't last long as the only "honky" female since "they had run out all the others." Other than Lieutenant Carney's remark, and Ms. Coleman's racially motivated hostility towards plaintiff, there is nothing from which to infer racial discrimination against Ms. Fain in training, assignment, or other treatment at the Jail from April 9—December 23, 1979. Ms. Fain did not complain about any of her supervisors, and each of them gave her above-average performance evaluations.

B. December 23, 1979—June 10, 1980

On December 23, 1979 in the officers' dining room, Officer Coleman threw a full soda can at Officer Fain. The can struck plaintiff in the back of the head. The Jail personnel called the D.C. police, and as a result of this incident, Officer Coleman pled guilty to criminal charges of assault and possession of a prohibited weapon. She was placed on probation for one year, fined $50, and transferred to another institution where she would not come in contact with Ms. Fain. Plaintiff's ex. 33. On December 24, Ms. Fain entered a hospital for treatment. She remained hospitalized for several weeks.

Plaintiff obtained a doctor's note dated February 19, 1980. A Dr. Gistolfi wrote on a prescription slip with Ms. Fain's name at the top, "May return to light duty work." Plaintiff's Ex. 11. Ms. Fain said she presented the note to Major Gaydos in March or April 1980. Major Gaydos is white. Ms. Bolden, whom the Court finds most credible, testified that she accompanied Ms. Fain to the Jail in April or May to try to get permission for Ms. Fain to return to work. Plaintiff's witness, Reverend Johnson, indicated that at least two doctors refused to give Ms. Fain a note stating that she was able to return to work. Major Gaydos did not recall ever seeing the light duty note. If he had, he testified, he would have inquired further from the doctor what was meant by light duty.

It is not necessary to resolve the conflicting testimony whether or not plaintiff presented the February 19 note to Major Gaydos, for Major Gaydos would not have acted in a discriminatory fashion by refusing to allow plaintiff to return to work on the basis of that note. Pregnant black female officers at the Jail, among them Ms. Bolden in 1980, received assignments lacking inmate contact. Plaintiff contends she should have been permitted to work on the same basis. The Court disagrees. An officer with a head injury could lose consciousness suddenly. It would be exceedingly

dangerous to permit an officer with an unhealed head injury to control electronic doors and alarms.

Ms. Bolden was given floor control duty for four days in September or October 1979 when she returned to work after recovering from an ankle injury. That treatment is inapposite to Ms. Fain's situation because Ms. Bolden provided a satisfactory doctor's certificate.

Mr. Washington, then administrator of the Jail, rejected plaintiff's request for advancement of 160 hours of sick leave. Ms. Fain alleged the rejection was due to her race. However, she did not complete the form properly. The space for her supervisor's recommendation, remarks, and signature was blank. Plaintiff's ex. 26. Plaintiff contended that neither Mr. Washington nor Mr. Holland, then superintendent of the Jail, told her she needed the approval of a supervisor. Both Mr. Washington and Mr. Holland are black. Assuming *arguendo* that plaintiff's recollection is accurate, her claim here fails for two reasons. First, she did not present any evidence that defendants granted anyone else advance sick leave at the Jail. The only instance of approval for advance sick leave presented at trial concerned an Officer Snead, who was employed at the Maximum Security facility. Second, the clear language of the form put plaintiff on notice that she should have first sought the approval of a supervisor.

Plaintiff alleged she was not promoted to GS–7 with the other members of her officer class in April 1980. The evidence showed otherwise. She was promoted on April 8, 1980 to GS–7. Defendants' exs. 12–14. Major Gaydos told plaintiff she had been promoted. She did not receive the papers confirming or implementing the promotion because the Mayor froze all promotions by Order 80–83 on February 28, 1980. Defendants' ex. 15. *All* promotions of correctional officers were held in abeyance until at least January 31, 1981 because of that freeze order.

### C. June 10—October 14, 1980

Ms. Fain received a doctor's report dated May 21, 1980, submitted to the Department of Labor for her workmen's compensation claim. The report stated that she had recovered fully and suffered no present disability. Defendants' ex. 20. The doctor's report was based on a letter from a Dr. James dated March 7, 1980. Dr. James wrote that Ms. Fain had recovered from the neurological point of view. He then referred Ms. Fain to another doctor to determine if further treatment was necessary. Plaintiff's ex. 12. Ms. Fain presented the March 7 letter to Major Gaydos shortly after she received it, in June. Based on these doctors' reports, Major Gaydos permitted plaintiff to return to work. From June 10–28, Ms. Fain worked at the Jail. She worked 13 days, at least 7 of which involved little or no inmate contact. She was not assigned posts in the housing units. Ms. Fain left work because of further health problems.

Although plaintiff denied receiving notice of a RIF issued May 16, 1980, she received a second RIF notice at the Jail on June 9, 1980. Plaintiff's exs. 18, 19. In July, the Mayor reduced the number of correctional officers to be discharged from 225 to 76. Ms. Fain remained on the list. When she received a letter dated June 19 cancelling her RIF notice, she assumed it concerned the June 9 notice. Actually, the June 19 letter cancelled only the May 16 notice. Ms. Fain denied receiving a further notice of RIF dated August 8, 1980. Ms. McKnight insisted that she sent all notices to Ms. Fain at her home by certified mail, but she was unable to produce receipts.

The Office of Personnel should have used simpler language in letters and kept certified mail receipts. But there was no evidence that the Office's confusion was motivated by racial discrimination against Ms. Fain. Other officers from Ms. Fain's class, such as Ms. Bolden, were also discharged by RIF at the same time. Ms. Fain was not at the Jail in either May or August, so the Office of Personnel could not contact her at work. Jail officials did not participate in deciding which correctional officers were to be discharged.

Ms. Fain obtained a doctor's note on September 19, 1980. The note indicated that she had recovered enough to resume work "tentatively." Defendants' ex. 21. Accordingly, Major Gaydos permitted her to return to work. Both plaintiff and Jail officials were unaware she had been discharged by RIF. After not receiving a paycheck for two pay periods, Ms. Fain consulted Major Gaydos. He called the Office of Personnel and learned to his surprise that Ms. Fain had been discharged by RIF.

Plaintiff complained that the Office of Personnel discriminated by failing to inform her in the fall of 1980 about rehiring. The Court credits Ms. McKnight's testimony that she tried to reach Ms. Fain by telephone and that notice of rehiring was publicized widely in the metropolitan area. The Department of Corrections began rehiring RIF-ed officers in December 1980. Ms. Bolden, plaintiff's friend, told Ms. Fain in December 1980 to call the Office of Personnel "because they were rehiring." The evidence is overwhelming that plaintiff never attempted to return to work at the Jail after October 14, 1980, although she knew about the rehiring from at least December 1980. At least two white correctional officers from plaintiff's class remained employed by the Department of Corrections in 1982. Plaintiff's ex. 25. Defendants told plaintiff repeatedly, even during trial, that she could return to work at the Jail.

## II.

### Conclusions of Law

■ To establish a prima facie case of disparate treatment under Title VII, the plaintiff "must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The elements of a Title VII prima facie case of disparate treatment are applicable to a claim under 42 U.S.C. § 1981.

*See General Building Contractors Association v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (§ 1981 reaches only purposeful discrimination); *Metrocare v. WMATA,* 679 F.2d 922, 925 (D.C.Cir.1982) (applying prima facie case for Title VII disparate treatment to § 1981 action). Of course, the elements of the plaintiff's prima facie case must be adapted flexibly to the situation involved, such as discharge, failure to promote, assignment, or disallowance of advance sick leave. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6; *Metrocare v. WMATA,* 679 F.2d at 925; *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir.1981).

■ Once the plaintiff has met the "not onerous" burden of proving a prima facie case, the defendant must "articulate some legitimate, nondiscriminatory reason" for the action it took. The plaintiff "must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Department of Community Affairs v. Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

■ Title VII and 42 U.S.C. § 1981 protect white persons as well as black persons. *McDonald v. Santa Fe Trail Transportation Company,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). For a white plaintiff, evidence of a racially discriminatory environment may serve as a functional equivalent of membership in a racial minority. *Parker v. Baltimore and Ohio Railroad Co.,* 652 F.2d 1012, 1018 (D.C.Cir.1981). A supervisory official may be found to have discriminated against members of his own race. *See Daye v. Harris,* 655 F.2d 258 (D.C.Cir.1981) (white plaintiff did not have to show direct evidence of racial motivation where disproportionate number of black employees received promotions and conspiracy was alleged between white and black officials to promote disproportionate number of blacks).

■ Plaintiff here failed to prove a prima facie case of racial discrimination in

training, assignment, denial of advance sick leave, promotion, or recall of correctional officers discharged by reduction in force. In particular, Ms. Fain did not show she (1) was treated differently from other correctional officers in training or assignment during the course of her employment at the Jail; (2) applied or qualified to return to light duty work at the Jail before June 10, 1980; (3) requested advance sick leave properly or was refused while others in comparable positions at the Jail received advance sick leave; (4) was denied promotion while other correctional officers received promotions; or (5) was denied an opportunity to return to work after her discharge by a reduction in force.

█ The Court disapproves of Ms. Coleman's behavior towards plaintiff. However, her behavior cannot be attributed to the District of Columbia. Ms. Coleman was not plaintiff's supervisor. Ms. Fain never requested removal from assignment with her. Ms. Coleman was reprimanded by her supervisor on at least one occasion for failing to support Ms. Fain. Finally, Ms. Coleman was punished and reassigned as a result of her assault on the plaintiff. The bias in one senior correctional officer does not establish a "pattern and practice" of discrimination against white female correctional officers at the Jail. See Freeman v. Lewis, 675 F.2d 398, 400–01 n. 14 (D.C.Cir. 1982) (bias in one individual employer, who died before plaintiff was denied promotion, was not sufficient evidence of "pattern and practice" of discrimination against whites and women).

█ In view of Ms. Fain's discharge by RIF, the confusion in providing notice, and the subsequent return of many of those discharged, a prima facie case of racial discrimination was proven in the area of discharge. Plaintiff showed she was terminated from a job for which she qualified. Other employees, most of whom were black, returned to work while plaintiff did not return. See Flowers v. Crouch-Walker Corporation, 552 F.2d 1277, 1282 (7th Cir.1977).

Defendants rebutted plaintiff's prima facie case by presenting evidence that the discharge was caused by a non-discriminatory application of a reduction in force (RIF) directive. The confusion surrounding the notice provided plaintiff, while regrettable, does not persuade the Court that the RIF was a pretext to discharge plaintiff or was applied in a discriminatory manner against plaintiff because of her race. Any inference that the Office of Personnel applied the RIF in a discriminatory manner against plaintiff was dispelled by her complete lack of effort to return to work in the face of knowledge that other correctional officers had returned. Plaintiff failed to persuade the Court that "a discriminatory reason more likely motivated" the implementation of the RIF towards plaintiff or that the defendants' "proffered explanation is unworthy of credence." Valentino v. United States Postal Service, 674 F.2d 56, 64 (D.C. Cir.1982), quoting Texas Department of Community Affairs v. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095.

The Court enters judgment for defendants and dismisses this action with prejudice. In accordance with the parties' stipulation, the Court orders the District of Columbia to pay plaintiff 17 days' back pay forthwith. To obtain the back pay, the plaintiff must acknowledge in writing her temporary rehiring for purposes of the 17 days' back pay, but she need not appear in person for a swearing in ceremony.