**Erlinda REGNER, Plaintiff,**

v.

**CITY OF CHICAGO, Defendant.**

No. 83 C 6957.

United States District Court,
N.D. Illinois, E.D.

Jan. 29, 1985.

Paddy Harris McNamara, Paddy Harris McNamara, Ltd., Chicago, Ill., for plaintiff.

Darka Papushkewych, Asst. Corp. Counsel, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

Before the Court are cross-motions for summary judgment in a promotion discrimination case under Title VII. Plaintiff Erlinda Regner, a Filipino, is employed as a Librarian I by the defendant Chicago Public Library (CPL). For the reasons stated herein, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

## I. FACTS

On four occasions, plaintiff Erlinda Regner applied for a promotion at the Chicago Main Library. The requirements for promotion to Librarian II are a master's degree in Library Science and one year of experience as a professional librarian. Regner has fulfilled both requirements. In addition, she has been employed as a professional librarian in the Chicago Public Library System since 1977. She has been in the Business/Science/Technology division in the Central Library since December, 1979.

All four promotions for which the plaintiff applied were in the Business/Science/Technology division. Pursuant to the selection procedure of the CPL, the candidates were interviewed and rated on their responses as well as the knowledge, skills and abilities identified as relevant to each such position. Regner was not selected for any of those positions. She filed suit under Title VII of the Civil Rights Act (42 U.S.C. § 2000(e)), alleging that she was not chosen because of her national origin (Filipino).

Plaintiff bases her claim of discrimination on the adverse impact which the selection procedure had on minorities. In addition, she asserts that the selection procedure was not validated as racially neutral and job-related. Her disparate impact theory rests on statistical evidence regarding the number of minority librarians promoted to Librarian II over a two and one-half year

period and the number of years which minority librarians spend at the CPL before being promoted.

The statistical evidence on the number of promotions made over the two-and-one-half-year period shows that 25 promotions or upgrades were granted to Librarian II and III levels at the CPL Main Library. Of these 25 promotions, 24 white librarians and 1 black librarian were promoted. A total of 61 promotions or upgrades to Librarian II and III levels were made in the entire CPL system, which includes the Main Library and all of its branches. Of these 61 promotions, 47 white librarians, 10 black librarians, 3 Asian librarians, and 1 Hispanic librarian were promoted. The percentage rates of promotion for the four groups represented in the 61 promotions is as follows: whites, 77.05 percent; blacks, 16.39 percent; Asian, 4.92 percent; and Hispanic, 1.64 percent.

The statistical evidence on the number of eligible applicants for these promotions shows that there were 81 librarians eligible for Librarian II as of January 1, 1981, broken down as follows: 63 whites amounting to 77.78 percent; 11 blacks amounting to 13.58 percent; 5 Asians amounting to 6.17 percent; and 2 Hispanics amounting to 2.47 percent. As of January 1, 1982, 89 eligible librarians break down as follows: 69 whites amounting to 77.53 percent; 12 blacks amounting to 13.48 percent; 6 Asians amounting to 6.74 percent; and 2 Hispanics amounting to 2.25 percent. As of 1983, 91 eligible librarians break down as follows: 71 whites amounting to 78.02 percent; 12 blacks amounting to 13.19 percent; 6 Asians amounting to 6.59 percent; and 2 Hispanics amounting to 2.2 percent. These statistics represent the number of Librarian I's who were employed for at least one year prior to the relevant time period. The number also represents librarians for the entire CPL system, including the Main Library and all branch libraries.

Other statistical evidence reveals percentages of racial composition for all persons qualified to be librarians in the Chicago area, according to Census for Population and Housing for the Chicago Metropolitan area. The racial composition is as follows: whites, 87.1 percent; blacks, 8.1 percent; Asians, 2.7 percent; and Hispanics, 1.7 percent. In addition, the overall percentages of persons employed within the CPL reflects the following statistics: whites, 76.4 percent; blacks, 17.1 percent; Asians, 4.4 percent; and Hispanics, 2.0 percent. In addition, there is statistical evidence which shows the average number of years elapsed between the date of beginning employment and the date of promotion: whites, 4.03 years; blacks, 5.13 years; Asians, 7.08 years; and Hispanics, 6.08 years.

Plaintiff also presented expert testimony regarding the required job description and interview questions for the position of Librarian II in the Business/Science/Technology division, which is the position which Regner applied for each time. Defendant submitted job descriptions and interview questions for the positions of Management Materials Librarian and Economics and Finance Librarian, both of which positions are in the Business/Science/Technology Division. In addition, defendant has provided the ratings of Regner and those selected for these two positions.

## II. DISCUSSION

Under Title VII, the plaintiff has the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Furnco Construction Corporation v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). After a *prima facie* case has been established, the burden shifts to the employer to "prove that he based his employment decision on a legitimate consideration, and not an illegitimate one such as race." *Id.* at 577, 98 S.Ct. at 2950. In cases alleging discrimination in promotions, the plaintiff makes a *prima facie* case by proving that the defendant's promotional practice "selects applicants for ... promotion in a racial pattern significantly different from the pool of applicants." *Albemarle Paper Company v. Moody*, 422 U.S. 405, 406, 425, 95 S.Ct.

2362, 2366, 2375, 45 L.Ed.2d 280 (1975). When a plaintiff relies on statistical evidence to demonstrate the disparate impact of an allegedly discriminatory practice, the statistical disparity demonstrated must be "significant" or "substantial." *Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977); *Clark v. Chrysler Corp.*, 673 F.2d 921, 926 (7th Cir.1982).

In the present case, plaintiff relies solely on statistical evidence to establish her *prima facie* case. Therefore, the Court will focus chiefly on the number of promotions and their composition as compared to the pool of eligible applicants in order to determine if the proper statistical evidence supports Regner's disparate impact theory.

### 1. *Statistical Evidence*

Plaintiff attempts to make her case for disparate impact by comparing the number of minorities chosen out of all 25 promotions at the Main Library with the number of minorities present in the pool of eligible librarians for the entire CPL system, including the branch libraries. The number of minorities (1) compared to the number of promotions (25) at the Main Library yields a minority percentage of 3.85 percent. Plaintiff compares this percentage with the minority percentage in the pool of eligible applicants for the entire CPL system, which is 22 percent. Comparing 22 percent with 3.85 percent, the plaintiff concludes that there is a significant disparity between defendant's promotional practice and the racial pattern contained in the pool of eligible applicants. In order for defendant's promotional practice to match the racial pattern in the applicant pool, the defendant had to promote 5-6 minority librarians instead of just one.

Defendant argues that the plaintiff uses the statistical evidence in a deceptive manner because she uses only promotions from the Main Library and then compares those figures to an applicant pool which encompasses eligible librarians in the entire CPL system, including the branch libraries. In order to present fair statistical evidence, defendant contends that the number of pro-

motions should encompass the entire CPL system. If the number of promotions from the entire CPL system is used, the minority percentage of promotion is almost 23 percent, which slightly exceeds the minority percentage in the pool of eligible applicants.

In addition, defendant argues that, since the plaintiff is a Filipino and therefore an Asian, the minority percentage only for promoted Asians should be used in comparison to the minority percentage for Asians in the pool of eligible applicants. The Asian percentage of promotions for the entire CPL system is 4.92 percent, as compared with the Asian percentage of eligible applicants, which is 6.17 percent, according to plaintiff's statistics. Comparing 4.92 percent to 6.17 percent, the defendant concludes that there is not a significant disparity because one additional Asian librarian promoted would destroy any disparity and therefore plaintiff has failed to make out her *prima facie* case.

When statistical evidence is used to establish a *prima facie* case of discrimination, the proper comparison is between the composition of the relevant work force (Librarian I's promoted or upgraded to Librarian II) and the qualified population in the relevant labor market. *Davis v. Califano*, 613 F.2d 957, 963 (D.C.Cir.1979), citing *Hazelwood School District v. United States, supra*, 433 U.S. at 308, 97 S.Ct. at 2741. In a promotion case such as this case, absent discriminatory promotion practices, the proportion of the protected group in each of the job classifications and grade levels should be approximately equal to the proportion of the protected group with the minimum necessary qualifications for promotion in the employer's labor force as a whole. *Davis v. Califano, supra*, 613 F.2d at 964; *see also Teamsters v. United States*, 431 U.S. 324, 339-40 n. 20, 97 S.Ct. 1843, 1856-57 n. 20, 52 L.Ed.2d 396 (1977); *Metrocare v. Washington Metro. Area Transit Authority*, 679 F.2d 922, 930 (D.C. Cir.1982); *Paxton v. Union National Bank*, 688 F.2d 552, 564 (8th Cir.1982). Therefore, the relevant labor market is

made up only of persons qualified for the promotions at issue. *Metrocare v. Washington Metro. Area Transit Authority, supra,* 679 F.2d at 930; *see also Movement For Opportunity v. General Motors,* 622 F.2d 1235, 1245, 1258 (7th Cir.1980); *EEOC v. United Virginia Bank,* 615 F.2d 147, 154 (4th Cir.1980).

■ In the present case, the pool of eligible applicants encompasses all Librarian I's employed by the CPL, including those in the branch libraries, who have at least one year of experience as a professional librarian. The Court finds that it is proper to exclude from the applicant pool qualified librarians not employed by the CPL because the CPL's promotional practices concentrate on promotion from within the entire CPL system, as opposed to lateral hiring. *Johnson v. Uncle Ben's, Inc.,* 628 F.2d 419, 425 (5th Cir.1980). Therefore, in this promotion case, the organization in which the plaintiff is an employee, the CPL, is the relevant labor market. *Davis v. Califano, supra,* 613 F.2d at 965.

■ The more crucial issue involving the statistical evidence in this case is whether the Main Library only or the entire CPL system, including the branch libraries, should be used in examining the number of Asians promoted in relation to the total number of promotions to Librarian II. While the Court finds that the applicant pool should be limited to qualified librarians within the entire CPL system, it is reluctant to further limit the number of promotions to the Main Library. Plaintiff argues that the number of promotions. should be limited to promotions occurring at the Main Library and should not include promotions in the branch libraries. In support of this argument, plaintiff in her affidavit contends that professional advancement is best at and her field of specialization is centered at the Main Library. The Court rejects the plaintiff's argument to limit the number of promotions to the Main Library for two reasons.

First, the Court finds that qualified librarians from the entire CPL system, including the branch libraries, may apply for promotions at the Main Library. In addition, qualified librarians from the Main Library may apply for promotions throughout the entire CPL system. Therefore, the free flow of promotions within the entire CPL system does not justify limiting the number of promotions in this case to a specific library branch or a specific division of the library.

Second, the Court finds that plaintiff's reliance on the disparate impact theory as the sole basis for her discrimination claim prevents her from arguing for promotion statistics limited to the Main Library. It is uncontested that the plaintiff applied for four promotions, which were all in the Business/Science/Technology division. Plaintiff has alleged no overt discriminatory acts in relation to the interviewing procedure for these four promotions. It is clear that plaintiff could not make a *prima facie* case of discrimination based on these four promotions alone, but rather must rely on the disparate impact of defendant's promotional procedure on a larger group of applicants. At the same time she invokes this impact theory on a larger group of applicants in relation to a larger number of promotions, plaintiff seeks to limit the number of promotions to the Main Library in order to show a significant or substantial statistical disparity. The Court believes that it would be improper to allow the plaintiff to gerrymander the statistical evidence in this way. Therefore, the Court finds that the appropriate number of promotions encompasses the entire CPL system, including the branch libraries.

■ Comparing the Asian percentage of promotions or upgrades to Librarian II within the entire CPL system with the Asian percentage of eligible applicants (Librarian I's with one year of professional librarian experience) within the entire CPL system, the Court finds that the Asian promotion percentage of 4.92 percent and the Asian qualified applicant percentage of 6.17 percent do not demonstrate a significant or substantial statistical disparity. The Court's finding is bolstered by the fact that one additional promotion of an Asian

librarian to Librarian II would eliminate any disparity between the defendant's promotional practices and the Asian percentage of qualified applicants. Having failed to demonstrate the alleged disparate impact of CPL's promotional practices, plaintiff has failed to make a *prima facie* case of discrimination and therefore defendant's motion for summary judgment on her claims under Title VII and 42 U.S.C. § 2000e is granted.

The Court rejects plaintiff's argument based on statistics regarding time-in-grade for promotions from Librarian I to Librarian II for two reasons. First, there is no evidence of the time period over which plaintiff's time-in-grade statistics have been gathered. The Court is concerned with 61 promotions which occurred approximately over a two-and-one-half-year period. Since the plaintiff's time-in-grade statistics cover 100 promotions, the Court assumes that they exceed the-two-and-one-half-year period and therefore cannot be accurate statistics in this case.

Second, plaintiff cites *Freeman v. Lewis*, 675 F.2d 398, 403 (D.C.Cir.1982) for the proposition that time-in-grade statistics can be used as a basis for determining liability in a single plaintiff case. In *Freeman*, the court held that, where the plaintiff had achieved the promotion in question, she must show that she was promoted at a slower rate than others similarly situated but outside of her protected group. *Id.* In the present case, plaintiff has not been promoted and has not shown the qualifications necessary to gain a Librarian II promotion over other candidates. In this situation, the Court rejects the use of time-in-grade statistics, representing others who have been promoted, as the sole basis for a *prima facie* case of discrimination, especially in light of the Court's finding that plaintiff has shown no disparate impact caused by defendant's promotional practices.

### III. CONCLUSION

Since the plaintiff has failed to prove a *prima facie* case of discrimination, and since the statistical evidence here is uncontested on cross-motions for summary judgment, defendant's motion for summary judgment is granted.

IT IS SO ORDERED.